### 7729

### GARNER v. WESTERN UNION TEL. CO.

TELEGRAPH COMPANIES—NEGLIGENCE—WILFULNESS.—The evidence of defendant as to its effort to deliver the telegram leads away from indifference to the rights of plaintiff so much so as to warrant the trial Judge to take away from the jury the issue of wilfulness, but it does not so completely destroy the presumption of negligence from delay in delivery as to withdraw that issue from the jury.

Before WILSON, J., Oconee, March Term, 1910. Modified.

Action by Thomas J. Garner against Western Union Telegraph Company. From order of nonsuit, plaintiff appeals.

*Mr. E. L. Herndon,* for appellant, cites: *Message carried notice of its importance and that mental suffering would result from delay:* 72 S. C. 530; 77 S. C. 174; 82 S. C. 461; 26 Stat. 85. *Where the evidence is conflicting or more than one inference can be drawn the issue is for the jury:* 82 S. C. 547; 83 S. C. 325; 84 S. C. 293; 82 S. C. 247.

*Proximate cause is also for the jury:* 62 S. C. 130; 78 S. C. 384; 83 S. C. 66; 81 S. C. 203.

*Messrs. Geo. H. Fearons* and *John Gary Evans,* contra.

December 1, 1910. The opinion of the Court was delivered by

Mr. Justice Hydrick. Plaintiff appeals from an order of nonsuit in this action, in which he seeks to recover actual and punitive damages for defendant's failure to transmit and deliver to him, within a reasonable time, a message from his father at Clinton, S. C., addressed to him at Seneca, S. C., as follows: "Mother is dead. Bury at Laurens tomorrow afternoon four o'clock."

The substance of the testimony was as follows: For plaintiff: C. R. Garner, plaintiff's father: Filed message at Clinton about 6 :30 p. m., September 1, 1909. Told agent to get it off as quickly as possible, as he wanted his son to come on first train. T. J. Garner, the plaintiff, was living at Seneca Cotton Mills, a mile and a quarter from Seneca; message delivered about 9 :50 a. m., September 2d; could and would have gone to funeral, if it had been delivered in time; last train upon which he could have gotten there in time left Seneca 9 a. m. on the second; on two previous occasions defendant had delivered messages to him at the mills.

For defendant: J. L. Brown, agent and operator of defendant at Seneca: No direct wire from Clinton to Seneca; messages have to be relayed through Augusta and Atlanta offices; received message about 7 p. m.. or a little after, September 1st; asked around and inquired if anybody knew Mr. Garner; made due inquiry in Seneca; failing to find him, and not knowing that he did not live in Seneca, at 7 :15 p. m. sent following service message to Clinton; "Please get some address—Garner signed same—can't find any one that knows him. Is he at cotton mill? Colored or white?"

Got no answer before going off duty at 11 p. m.; there is telephone communication between defendant's office and cotton mill, and messages for persons at mills are frequently telephoned to the superintendent; defendant has three operators at Seneca; office kept open day and night; witness' hours were from 2 to 11 p. m.; Folger's hours from 7 a. m. to 2 p. m.; while on duty, witness handled this class of messages.

C. Folger, another agent and operator of defendant's at Seneca: Office hours from 8 a. m. till 7 p. m.; not required to transact Western Union business after 7 p. m.; railroad and Western Union have same office and operators, but separate wires; railroad office open day and night; witness' hours from 8 a. m. till 2 p. m.; went on duty at 8 a. m., September 2d, and found original and service message sent by Brown the evening before on file; made no effort to find plaintiff at cotton mill as that was supposed to have been done before service message sent; at 9:55 received following reply to service message: "Please try cotton mill, advising;" phoned cotton mills; found plaintiff; delivered message; Brown goes off duty as Western Union operator at 7 p. m., and as railroad operator at 11 p. m.

F. M. Rowland, agent and operator of defendant at Clinton: Office hours there 8 a. m. to 7 p. m.; message sent at 6:45 p. m., September 1st; service message received about 8 a. m. next morning; sent reply immediately—in a very few minutes after—as soon as could call up office and get off other messages ahead; one message cannot have precedence over another—first come, first served the rule; said try cotton mill because plaintiff's father, who filed message, was a mill operative.

The record shows that on close of plaintiff's testimony, defendant moved for a nonsuit,—first on the whole case, which was refused. It then moved for nonsuit on the cause of action for punitive damages, which was also refused. Defendant then introduced its testimony, and, on close

thereof, renewed the motion for nonsuit, which was granted.

The grounds upon which the motion was made were, in substance: 1. Because the undisputed testimony showed that the message was received after office hours; that there was nothing to show that such hours were unreasonable, and there was, therefore, no duty on defendant to deliver it, until after office hours the next morning, which it did within a reasonable time; 2. Because the undisputed testimony showed a *bona fide* effort to deliver the message on receipt of it, even after office hours; that addressee could not be found and service message was sent asking for better address, on receipt of which the message was promptly delivered; that there was no evidence of unreasonable delay, or that the delay was the proximate cause of the injury to plaintiff.

If plaintiff's testimony makes out a *prima facie* case, he is entitled to have it submitted to the jury, unless the defendant's testimony, explanatory or exculpatory, is not only undisputed but indisputable. In other words, if the testimony is susceptible of more than one reasonable inference, and one of such inferences supports the material allegations of the complaint, it must be left to the jury to say which inference is properly deducible from it. Otherwise, the Judge becomes the trier of the facts, in violation of Constitution.

In *Baker* v. *Tel. Co.*, 84 S. C. 482, 66 S. E. 182, Mr. Justice Woods, speaking for the Court, said: "The rule in this State is that delay in the transmission and delivery of a telegram is evidence of negligence on the part of the telegraph company (citing cases), and that long and unexplained delay is evidence of wilfulness or wantonness." Again, at page 483: "It is not possible to lay down any hard and fast rule as to the duration of the time of delay necessary to carry the issue of wilfulness to the jury, because of the varying circumstances of each case." In that case, a

delay of between four and five hours, without proof of a direct line between the initial and terminal offices, or other supporting circumstances, was held insufficient to carry the case to the jury on the cause of action for punitive damages. The facts of that case were quite as strong, if not stronger, in plaintiff's favor on that issue, than are the facts of this case.

In *Johnson* v. *Tel. Co.,* 82 S. C. 87, 63 S. E. 1, a change of the initials of the addressee occurred in transmission, but the undisputed evidence showed that reasonable efforts were made to deliver it in the changed form, and to correct the error.; and, in that case, a delay of sixteen hours—twelve of which were not office hours—was held insufficient to carry the cause of action for punitive damages to the jury. In *Glenn* v. *Tel. Co.,* 84 S. C. 160, 65 S. E. 1024, the Court said: "We cannot go to the extent of saying that undisputed evidence of *any* effort to deliver will be sufficient to repel the presumption which arises from long delay. The evidence of the effort must, in the first place, be undisputed, and, second, it must be such that an inference of a conscious failure to discharge the duty of prompt delivery could not reasonably be drawn from it, when considered in the light of all the other evidence in the case."

Following the principles announced in the foregoing cases, we do not think that a reasonable inference could have been drawn from the testimony of a wilful disregard of duty. The telegram was promptly sent and received, and an effort was promptly made to find the addressee, and to get a better address. While these efforts may or may not have been sufficiently vigorous, under the circumstances, to repel the presumption of negligence which arises from the delay, as to which we express no opinion, as that is a question for the jury, they do lead away from any reasonable inference of indifference to duty or to plaintiff's rights. Therefore there was no error in granting the nonsuit on th cause of action for punitive damages.

But we think the Judge erred in granting a nonsuit on the whole case. We have seen that delay in the transmission or delivery of a telegram raises a presumption of negligence. While it is a rebuttable presumption, yet, when the testimony is sufficient to raise it, the burden is cast upon the defendant to rebut it by proving that the delay was not due to its negligence. The same rule is applied in cases of stock killed by collision with an engine or cars of a railroad company. *Joyner* v. *Ry.,* 26 S. C. 49, 1 S. E. 52; *Mack* v. *Ry.,* 52 S. C. 323, 29 S. E. 905, 40 L. R. A. 679; *Ritter* v. *Ry.,* 83 S. C. 213, 65 S. E. 175; and in cases of passengers injured by some agency or instrumentality of the carrier. *Sullivan* v. *Ry.,* 85 S. C. 532. The reason for applying it in cases of delay in the transmission or delivery of a telegram are equally as strong as in the cases mentioned. When the presumption is raised by the testimony, it stands throughout the case, just as any other fact in evidence, weak or strong, according to the circumstances; and it must go to the jury, to be weighed by them along with the rebutting evidence, unless, as above stated, the rebutting evidence is of such a character that no other reasonable inference could be drawn from it than that the presumption has been overthrown.

As the case must go back for a new trial, we will not discuss the testimony, but merely point out the issues of fact made by it, which show that the cause of action for negligence should have been sent to the jury. There is a conflict in the testimony of defendant's witnesses Brown and Folger as to what were the office hours at Seneca. *Olgivie* v *Tel. Co.,* 83 S. C. 12, 64 S. E. 860. The witness Brown does not give any detail of his efforts to find plaintiff. He merely says that he asked around and inquired if anybody knew him. He does not say of whom, or of how many he inquired, whether of the postmaster, the policeman of the town, the proprietors of the hotels and boarding houses or of others who might have been able to give him informa-

tion. His own testimony shows that the message was received at 7 o'clock, or a little after, and that the service message was sent at 7:15, and that he did nothing after sending it to find plaintiff. This tended to show that he did not spend over fifteen minutes, if so much, in his efforts to find plaintiff. He says he made no inquiry outside of town. It was his duty to do so. *Martin* v. *Tel. Co.*, 81 S. C. 432, 62 S. E. 833. All this, together with the question whether he should have inquired by telephone at the cotton mills for plaintiff—especially in view of the fact that his own service message suggested an inquiry at the mills and the testimony that two messages had previously been delivered to plaintiff at the mills—made questions of fact for the jury on the issue of due diligence.

Judgment reversed as to cause of action for negligence.