## NORMAN v. SOUTHERN RY.

1. EXCEPTIONS too general.
2. DAMAGES—PUNITIVE—RAILROADS—PASSENGERS—JURY.—Whether a passenger put off the train by conductor because the time limit printed on his ticket has expired, is entitled therefor to punitive damages, his allegations being applicable thereto, is for jury.
3. RAILROADS—PASSENGERS—FARE.—A passenger paying full fare for a general ticket is not bound by limitations printed thereon, unless his attention has been especially called to them, and he has assented thereto.

Before WATTS, J., Union, June, 1902.    Affirmed.

Action by Charles H. Norman against Southern Railway Co.  From judgment for plaintiff, defendant appeals.

*Mr. C. P. Sanders,* for appellant, cites: *A railroad company has the right to make and enforce reasonable rules:* 4 Elliott on R. R., par. 1576; 19 Ency., 1 ed., 820, and notes; 5 Ency., 2 ed., 482, and notes; Hutch. on Car., secs. 587-8; 1 Rev. on Rys., 4 ed., 88; 2 Wood on Rys., 2 ed., 1198; *and, therefore, a rule limiting the time within which a ticket should be used:* 4 Elliott on Rys., sec. 1598; 3 Wood on Rys., 2 ed., 1636; 1 Red. on Rys., 4 ed., 100; 25 Ency., 1 ed., 1093; 13 Am. R., 619; 23 S. R., 583; 1 Allen., 267; 63 N. Y., 101; 43 L. R. A., 136; 40 Vt., 88; 34 Md., 532; 83 Am. St.

R., 242; 39 Am. St. R., 484; 18 Am. & Eng. R. R. Cas.,
310, and note 312; 6 Id., 338; Hutch. on Car., 575, 576,
587; 1 Fet. on Car. Pass., 731; 36 S. E. R., 212.  *And pur-
chaser is charged with notice of time limit printed on ticket:*
4 Elliott on R. R., sec. 1576; 1 Fetter on Car. of Pass., secs.
285, 287; Hutch. on Carriers, secs. 581, 587; 3 Wood on R.
R., 1636; 13 Am. R., 618; 88 Am. Dec., 199; 10 Am. R.,
711; 57 Am. St. R., 238; 45 Am. Dec., 190; 92 Mich., 406;
8 Am. St. R., 392; 43 L. R. A., 136; 5 Ency., 484, 485, and
notes; 51 Am. St. R., 208-9; 57 Id., 242; 13 Am. R., 619;
39 Am. St. R., 488; 88 Am. Dec., 199; 83 Am. St. R., 244;
25 Pac. R., 73; 5 S. C., 358; 26 S. C., 96; 62 S. C., 12.
*Face of ticket is conclusive evidence of right of passenger:*
Hutch on Car., 575, 580; J. & H., 4 Ell. on R. R., secs.
1393-4; 9 Am. & Eng. R. R. Cas., 351; 10 Am. R., 714-5;
26 Am. St. R., 913; 15 Am. R., 419; 127 U. S., 390; 32
Am. St. R., 528; 132 U. S., 150; 26 Am. R., 531; 43 L. R.
A., 139; Bish. Non Con. L., secs. 1087-89-93; 9 L. R. A.,
132; 15 Am. R., 419; 3 Am. Neg. R., 511; 46 Am. R., 483.
*Plaintiff not entitled to punitive damages:* 9 L. R. A., 134;
106 N. C., 168; Cooley on Torts, 774-5; 15 Am. R., 423;
26 Id., 531; 17 L. R. A., 802; 9 Am. & Eng. R. R. Cas.,
352; 23 Am. R., 730; 54 Ark., 354.

*Messrs. McGowan* and *Gunter,* contra, cite: *Ticket is a re-
ceipt and not a contract:* 25 Ency., 1074; 13 A. R., 617; 17
N. Y., 306; 43 L. R. A., 140.  *Mere knowledge of condi-
tions printed on ticket or notices posted are not sufficient
evidence of his assent to it:* 2 Am. & Eng. R. R. Cas., 9; 8
A. R., 543; 16 Wall., 329; 43 L. R. A., 143; 13 A. R., 617.

April 1, 1903.  The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY.  *Statement of facts.*—The facts,
omitting the formal allegations, are thus set out in the com-
plaint:

"Second.  That on the 7th day of January, 1899, the plain-

tiff being then at Union, in the county of Union aforesaid, his place of residence, and desiring and intending to go to Spartanburg aforesaid on business, purchased from defendant one first class passage from Union to Spartanburg, paying full fare for same, and receiving a first class ticket therefor.

"Third. That on said 7th day of January, 1899, the plaintiff boarded the train upon which he expected to travel, but just before its departure plaintiff was handed by the defendant's ticket agent, who was also the telegraph operator, a telegraphic dispatch directing plaintiff not to come to Spartanburg that day; and plaintiff thereupon, because of said dispatch, decided to remain at Union, and got off the train along with said agent; the plaintiff's change of purpose and his reason therefor was known to said agent, and plaintiff did not use, or attempt to use, said ticket that day.

"Fourth. That on the 8th day of January, 1899, plaintiff again boarded defendant's train for Spartanburg, and when accosted by the conductor, tendered the ticket for passage to Spartanburg. That the conductor refused the ticket, telling the plaintiff he could not ride upon it, that such ticket was good only on the day of sale, and that he would have to pay fare or get off the train, which plaintiff declined to do.

"Fifth. That at Pacolet station the conductor came to plaintiff, telling plaintiff that by order of the defendant's superintendent, the plaintiff must pay fare or leave the train; and plaintiff declined to leave, whereupon the conductor seized plaintiff and forcibly ejected him from the car; and plaintiff was compelled, in order to pursue his journey, to purchase and pay for a passage from said station to Spartanburg. And plaintiff was ejected from said car by order of said superintendent.

"Sixth. That by reason of said wrongful conduct and force of defendant in ejecting the plaintiff, he was greatly distressed and disturbed in his mind and feelings and humiliated in spirit, and was held up and exposed to the gaze and contempt of strangers and passengers upon the car as a per-

son who was attempting to defraud the defendant company and cheat them out of a passage or fare.

"Seventh. That the ticket purchased at Union and tendered for passage and refused, had printed upon its face the following among other words: 'Good for one first class passage, unless otherwise notched, if used on or before midnight of date cancelled by "L" punch in margin below, only on the trains stopping at destination;' and the date of its sale, January 7th, 1899, was stamped upon its back, and same date was cancelled by 'L' punch in margin below; but the plaintiff avers that at the time of the purchase by him of said passage and receipt of said ticket, he was not aware that the ticket contained the printed words above set forth, or that there was any condition or limitation that the ticket was good only on the day as canceled by the punch, or good only on day of sale; and he was not aware of any rule or regulation of the defendant company that such ticket was good only on day of sale or as canceled, or that the ticket purchased by plaintiff was good only and must be used on the 7th day of January, 1899.  And plaintiff avers that he had previously ridden upon defendant's trains on similar tickets on days subsequent to the day of sale.

"Eighth. That by reason of the facts hereinabove alleged the plaintiff has suffered injury and damage to the amount of six hundred ($600) dollars."

The jury rendered a verdict in favor of the plaintiff for $200.

*Opinion.*—The first and second exceptions assign error on the part of his Honor, the Circuit Judge, as follows:

"1. In allowing the following questions to be asked the plaintiff, and in allowing him to answer the same: Q. Did you say anything to him with reference to the ticket as to why you got off?  And also in allowing the plaintiff to detail a conversation had between himself and the telegraph operator on the day he purchased the ticket in question.

"2. In allowing the plaintiff in reply to testify as to facts

which he says occurred between himself and the conductor, which facts had already been testified to, the error being that the same was cumulative evidence."

While these exceptions were not formally abandoned, nevertheless, they were not discussed by the appellant's attorney. They, however, fail to point out any specific error. and are, therefore, too general for consideration.

The thirteenth exception is as follows: "13. Because his Honor erred in refusing defendant's 12th request: 'In this case only actual damages can be allowed, no vindictive or punitive damages can be recovered,' and in submitting to the jury the question of vindictive or punitive damages, it being respectfully submitted, that in this case there was a time limitation plainly printed upon the ticket, which his Honor instructed the jury the defendant company had a right to make; and it being an admitted fact that the time within which the ticket was to be used had expired, and the evidence showing that there was no unusual force, no insult, no wilfulness or maliciousness on the part of the defendant company, but only an honest effort to enforce a reasonable rule of the company in a quiet and dignified way, his Honor should have instructed the jury that this was not a case for vindictive or punitive damages."

By reference to the complaint, it will be seen that the allegations thereof are appropriate to an action for punitive damages. In the case of *Meyers* v. *Southern Ry. Co.,* 64 S. C., 514, Mr. Justice Jones says: "It was fairly left to the jury in other portions of the charge to determine whether defendant's agent was merely negligent in his conduct, or whether he was acting wilfully or wantonly. If defendant's agent, conscious of plaintiff's right as passenger, nevertheless invaded that right by exacting and coercing an unlawful payment of money under threat of expulsion from the train, his conduct was wilful or wanton, such as would subject defendant to examplary damages." In the case of *Griffin* v. *Southern Ry. Co.,* 65 S. C., 122, the Court uses this language: "It is frequently difficult to tell

whether an act of wrong is attributable to wilfulness or mere inadvertence, which is the foundation of negligence; and whenever the facts are susceptible of more than one inference, it is peculiarly the province of the jury to determine such question.   *Pickens* v. *R. R. Co.,* 54 S. C., 498, 32 S. E., 567.   The fact that it is often hard to determine whether an act of wrong was the result of recklessness or inadvertence, was no doubt one of the reasons inducing the legislature to pass the act of 1898, hereinbefore mentioned."   These cases are cited with approval in *Marsh* v. *W. U. Tel. Co.,* 65 S. C.,          The presiding Judge could not have decided that the plaintiff was not entitled to punitive damages in this case without invading the province of the jury.

All the other exceptions, in different forms, raise the question whether his Honor, the Circuit Judge, erred in ruling that the plaintiff was not bound by the conditions printed upon the ticket unless he had actual notice thereof.   The authorities upon this question are conflicting, and it has never been decided in this State. The principle is correctly stated in the case of *Louisville & N. R. Co.* v. *Turber,* 43 L. R. A. (Tenn.), 140, as follows: "While there may be some uncertainty and even conflict in the authorities, we are of the opinion that the correct rule is that a person who purchases a general ticket, and pays the usual price therefor, is entitled to one passage, unlimited as to time upon any train which, under the proper and usual schedule of the road, stops at the point of the passenger's destination.   If a ticket, limited or conditional, is sold to a passenger, it can only be done upon an express agreement with him, either oral or in writing, and either based upon a consideration or with the alternative presented to the passenger of a full and unlimited ticket."   (Numerous authorities are cited to sustain this doctrine.)   Continuing, the Court says: "So, in *Michigan C. R. Co.* v. *Mineral Springs Mfg. Co.,* 16 Wall, 330, 21 L ed., 303, it is said: 'Nothing short of an express stipulation by parol or in writing will be permitted to discharge a carrier from the duties which the

law has annexed to his employment, and such agreement is not to be implied or inferred from a general notice to the public, limiting the obligation of the carrier, which may, or may not, be assented to.' See, also, *New Jersey Steam Nav. Co.* v. *Merchants Bank,* 6 How., 344, 13 Ll. ed., 455. We are also of opinion that the mere stamping or printing of a limitation or condition upon the back or face of a ticket, and the acceptance of such ticket by the passenger without more, are not sufficient to bind him to such limitation or condition, in the absence of notice to him of such condition or limitation, and his assent thereto, when he purchases his ticket. It cannot be presumed that every person buying a railroad ticket for ordinary and general use will in the hurry and bustle of travel stop to read and critically inspect his ticket. As a matter of fact, but little opportunity is afforded him to do so. He generally takes his place with the crowd at the ticket window and produces and hands over his money with a request for ticket to destination. His money is received. The ticket is procured and, after being stamped, is handed to him through the ticket window. He has no opportunity to see what is upon it, and he has no time in the rush to stop and read and consider what may be printed or stamped on its face or back; and when he has paid full fare, there is no occasion for his doing so, inasmuch as he can safely rely upon the contract which the law makes for him. Ordinary local tickets do not generally contain any terms of contract and are not intended to do so. They are mere tokens to the passenger and vouchers to the conductor, adopted for convenience to show that the passenger had paid his fare from one place to another, very much in the nature of baggage checks. The contract is, in fact, made when the ticket is purchased, and if it is different from what the law would imply, it must be so stated and assented to when the ticket is delivered. Nor will the posting of notices in the waiting rooms, ticket offices and on the cars affect purchasers with notice in such cases. Passengers have but little time or opportunity to read such placards, and it would impose quite

a serious burden upon travel, that the public must read all these notices thus posted before taking passage on a train upon which they are willing to and do pay full fare. _Rawson_ v. _Pennsylvania R. Co.,_ 48 N. Y., 212, 8 Am. Rep., 545; _Cole_ v. _Goodwin,_ 32 Am. Dec., 505, and note; 19 Wend., 251; Ray Passenger Carriers, sec. 145; Hutchison Carriers, secs. 246, 580, 581; 4 Elliott Railroads, sec. 1593. This rule, which we consider to be settled by the weight of authority and by reason, by no means prevents a railroad company from selling special tickets for special trains, with limitations and conditions, such as excursion, round trip, commutation and mileage tickets, when the conditions and limitations are known to the purchaser, and assented to, orally or in writing, and he has paid for such ticket less than the usual fare. When tickets are sold at reduced rates, it has been very wisely said that the purchaser should, in view of such reduced fare or greater privileges, expect and look for some conditions, limitations and terms, different from those attaching to tickets generally, and be on his guard to be informed of them. But there is no such obligation upon the ordinary passenger, who pays the usual or full fare, and asks for no reduced rates or special privileges, and he has a right to expect an unlimited ticket." We have quoted at length from the foregoing case because its reasoning renders unnecessary the citation of other authorities.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.