### 10343

THOMPSON *ET AL.* v. ATLANTIC COAST LINE R. CO. *ET AL.*
KELLERS *ET AL.* v. SAME.

(102 S. E. 11.)

1. DAMAGES—EVIDENCE OF PREMATURE BIRTH ADMISSIBLE IN PERSONAL INJURY ACTION THOUGH NOT SPECIFICALLY PLEADED.—In passenger's action against railroad for injuries in derailment, wherein was alleged that plaintiff "was seriously and permanently injured, suffered a fearful and terrible mental and bodily shock," testimony that injury to plaintiff resulted in the loss of an unborn child was admissible, though not specifically pleaded; such testimony tending to prove the extent of plaintiff's injuries and to show that the permanent injuries caused by the premature birth was the proximate result of the injuries sustained in the accident.

2. CARRIERS—CARRIER WHOSE PASSENGERS IS INJURED PRESUMED TO BE NEGLIGENT.—When a passenger is injured by an instrumentality of the common carrier, there is a presumption of negligence; the amount of testimony necessary to overcome such presumption being a question of fact for the jury.

3. EVIDENCE—JURY NOT BOUND TO ACCEPT OPINION OF EXPERT.—The jury is not bound to take the opinion of an expert witness.

4. CARRIERS—OPINION OF EXPERT AS TO CAUSE OF ACCIDENT NOT SUFFICIENT TO OVERCOME PRESUMPTION OF NEGLIGENCE.—In action against railroad for injuries to passenger in derailment, Court cannot say, as a matter of law, that the mere opinion of an expert witness that the cause of the accident was a broken bolt, which could not have been detected by the most expert inspection, is sufficient to overcome the presumption of negligence.

5. CARRIERS—WHETHER DERAILMENT WAS RESULT OF CARRIER'S NEGLIGENCE FOR JURY.—In passenger's action against railroad for injuries sustain in derailment from defect in car, question of railroad's negligence held for jury.

6. APPEAL AND ERROR—SUPREME COURT WILL NOT PASS ON EVIDENCE OR DISTURB VERDICT IF MORE THAN ONE INFERENCE CAN BE DRAWN FROM TESTIMONY.—Where more than one inference can be drawn from the evidence, the Supreme Court has no jurisdiction to pass on the manifest weight of the testimony, nor to disturb the verdict, though it may be greater than Court may think proper.

7. RELEASE—ISSUE AS TO FRAUDULENT PROCUREMENT OF RELEASE PROPERLY SUBMITTED.—In action for injuries to passenger sustained in derailment, wherein railroad claimed to have been released from liability, issue of whether the releases had been freely and voluntarily given, or had been procured by fraud, coercion, or misrepresentation, *held* properly submitted under the evidence.

8. RELEASE—INSTRUCTION IN PASSENGER'S ACTION FOR INJURIES NOT MISLEADING.—In action against railroad for injuries to passenger in derailment, wherein railroad claimed that passenger had released it from liability, instruction *held* not to mislead jury to think that mere inadequacy of consideration was ground for setting aside of release, in view of charge as a whole instructing that passenger could not recover if release was freely and voluntarily given.

9. CARRIERS—RAILROAD SUED WITH PULLMAN COMPANY COULD NOT COMPLAIN OF DIRECTION OF VERDICT FOR LATTER.—In passenger's action for injuries in derailment against railroad and the Pullman Company, where the railroad's own witnesses testified that it was the duty of the railroad to inspect and repair the running gear of the Pullman cars while in use, and where there is no evidence that the Pullman Company was responsible for the roadbed, railroad could not complain of· direction of verdict for Pullman Company.

Before DeVore, J., Charleston, Spring term, 1919.

Actions by Gertrude B. Thompson and husband, and by Edyth Kellers and husband, against the Atlantic Coast Line Railroad Company and others. Judgments for plaintiffs, and named defendants appeal.

*Messrs. Rutledge & Hyde,* for appellant, submit: *It was error to permit a question to be asked of physician of plaintiff with reference to a serious physical condition from which the plaintiff had suffered, not set out in the complaint, and entirely different from any injury therein complained:* 72 S. C. 114; 38 S. E. 958; 113 Ga. 564; 42 S. E. 1054; 116 Ga. 719; 45 S. E. 348; 113 N. C. 59; (S. C.) 63 S. E. 456; 81 S. C. 635; 62 S. E. 872; 92 S. C. 564. *There was a total*

*failure of evidence to support the allegation of negligence and the specifications thereof alleged in the complaint, and the motion for nonsuit should have been granted:* 74 S. C. 102. *A verdict should have been directed for the defendant upon the ground that the only inference from the testimony was that the accident and resulting injuries were caused by a latent defect which could not be observed by the highest degree of reasonable care, and that the only inference from the testimony was the injuries sustained by the plaintiff were not due to any act of negligence alleged against the railroad company in the complaint:* 7 S. E. 639; 38 S. E. 328; 10 Corpus Juris, p. 1067; 138 Fed. 37; 133 Fed. 904; 109 U. S. 173; 29 L. Ed. 1003; 86 S. C. 98; 67 S. E. 899. *Both the English and American cases formerly held that a railroad company was liable for injury caused by a defect in equipment, although such defect could not have been discovered by any practical mode of examination: Calden v. N. Y. Central,* 26 N. Y. 102; *Sharp v. Grey,* 9 Bing. 457. *But this rule has been much relaxed by later decisions everywhere. Mr. Moore, in his book on Carriers, vol. II, page 1117, says the English case above cited was distinctly repudiated by the English Courts, "and the rule was established that the contract made by a common carrier of passengers for hire, with a passenger, is to take due care, including in that term, the use of skill and foresight, to carry the passenger safely, and that it does not contain or imply a warranty that the vehicle in which he is carried is perfect. That the carrier is not liable for latent defects not discoverable by the most careful inspection nor by any degree of care, skill and foresight." Readhead v. Railroad Co.,* Law Rep. 2 Q. B. 412. *In New York, it is said that the doctrine is well established that a latent defect in its road or appliances which will relieve the carrier of passengers from responsibility is such only as no reasonable degree of human skill and foresight could guard against:* 137 N. Y. 13; 120 N. Y. 170; 58 N. Y. 126; 85 Ill. 80. *Inadequacy of consideration is no ground for setting aside a*

*release obtained without fraud, coercion or misrepresenta-*
*tion:* 99 S. E. 133. *The jury having found a verdict in*
*favor of the conductor, the presiding Judge should have*
*granted appellant's motion for judgment on the record in its*
*favor:* 100 S. C. 266; 68 S. C. 56; 109 S. C. 145.

*Messrs. P. A. Willcox* and *S. M. Wetmore,* also for appel-
lant, submit: *In order to recover special damages, it has been*
*well settled by this Court in numerous cases, that the defend-*
*ant must have had notice, and that such notice must be both*
*alleged and proved:* 71 S. C. 29. *The fact that a passenger*
*was injured by the instrumentality of the defendant com-*
*pany raised a presumption which had to be overcome, but*
*when rebutted by positive evidence, as in this case, the pre-*
*sumption falls utterly and completely:* 91 S. C. 139; 55 S.
C. 392; 73 S. C. 221; 69 S. C. 125; 81 S. C. 317; 84 S. C.
295; 93 S. C. 74; 90 S. C. 362; 98 S. C. 205; 103 S. C. 281;
105 S. C. 76; 106 S. C. 270; 106 S. C. 355.

*Messrs. Logan & Grace,* for respondents, submit: *In*
*actions for tort the party who commits a trespass or other*
*wrongful act is liable for all the injury proximately result-*
*ing, although such injury could not have been contemplated*
*as the probable result of the act done and may have been the*
*indirect result thereof:* Sutherland on Damages, sec. 1244.
and cases cited; 99 N. W. 281; 101 Am. St. Rep., p. 268;
81 Pac., p. 189; 84 N. W., p. 798; 82 Minn., p. 235; 60
S. W., p. 891. *The plaintiffs having been injured by an*
*instrumentality of the carrier, the presumption of negligence*
*arose, and a nonsuit could not have been granted:* 105 S. C.
484; 100 S. C. 40; 88 S. C. 97. *This Court will not reverse*
*a judgment on the ground that it was against the manifest*
*weight of the evidence:* 94 S. C. 311; 95 S. C. 199. *This*
*Court will not disturb a judgment on the ground that the*
*verdict was excessive:* 103 S. C. 117; 100 S. C. 38-39.
*Appellant was not entitled to have the trial Court enter a*
*judgment in its favor on the record on the ground that th*

*jury found a verdict only against the railroad company and not against Conductor Paul, as this case does not come within the principle laid down in 104 S. C. 266, and 106 S. C. 21, but does come within the principle laid down in 68 S. C., p. 56; 65 S. C., p. 332; 65 S. C. 341. Where the consideration for a release is grossly inadequate, or where it is obviously insufficient, the Court will not construe its acceptance as a release and a bar to an action:* 23 R. C. L., sec. 12, p. 383; 70 S. W., p. 1; 109 Tenn. 43. *Under the testimony the Pullman Company was entitled to a direction of a verdict as the delict proved was a breach of duty by the railroad company:* 81 S. C. 326.

January 26, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant, in its argument, thus states its case:

"It appears that the action was for damages due to personal injury, nervous shock, etc., alleged to have been sustained by the plaintiffs while passengers on a train of the defendant, consisting, among other things, of the Pullman car upon which the plaintiffs were riding.

"Both plaintiffs claiming to have been injured in the same accident and the allegations of negligence being the same in both cases and the defenses the same, the cases were tried together. A verdict of $10,000 was awarded to plaintiff, Mrs. Thompson, and a verdict of $100 was awarded the plaintiff, Mrs. Kellers.

"The allegations of negligence in each case were as follows:

"(a) In failing and omitting to take care to prevent derailment.

"(b) In not adopting the proper safeguards to protect said train and car so that said accident would not have happened.

"(c) In causing and allowing said train and car to be derailed.

"The allegation of injury in the case of Mrs. Thompson was as follows:

" 'That she was thrown from the place occupied by her, and that she had her infant child in her arms, and that she was thrown with such force and violence against said car that she was rendered unconscious, and her head badly bruised and her side and back fearfully wrenched, jerked, and strained, and was seriously and permanently injured, suffered a fearful and terrible mental and bodily shock, and she was rendered almost a complete nervous wreck by reason of her injuries, and the frightful and awful experiences resulting from her injuries and shock; that plaintiff had only recently come out of a hospital in the city of Washington, where she had been treated for illness, and in consequence was utterly unable to withstand the agonizing and fearful shock to her mental and bodily system by reason of the jolt, jerk, and jar caused by the derailment of said train.'

"The allegations of injury in the case of Mrs. Kellers were:

" 'That her right arm was fearfully bruised, jerked, and strained, her back badly wrenched, and her nervous and bodily system frightfully shocked and injured, she was seriously and permanently injured and (that she) was rendered an almost complete nervous wreck by reason of her injuries, and the frightful and awful experiences resulting from her injuries and shock, and will be otherwise injured.'

"Argument. Coming directly to the consideration of the first exception which complains of the ruling of the Court in permitting a question to be asked Dr. A. E. Baker, physician of the plaintiff, with reference to a serious physical condition from which the plaintiff had suffered, not set out in the complaint, and entirely different from any allegation of injury therein complained "

1. The testimony of Dr. Baker referred to the "mental and bodily" injury of Mrs. Thompson, which was the result of the injury. It included the loss of an unborn child, which was not the subject of the action. The testimony tended to prove the extent of the plaintiff's injuries and was competent. The testimony tended to show that the injuries caused the premature birth, and the premature birth was cause of the permanent injuries, *i. e.,* the wreck was the proximate cause of the plaintiff's injuries. The testimony was competent, and this exception is overruled.

2. The appellant thus states the second question:

"The second exception assigns error in overruling the motion of the defendant, railroad company, having nonsuit made upon the ground that there was a total failure of evidence to support the allegation of negligence and specifications thereof alleged in the complaint."

When a passenger is injured by an instrumentality of the common carrier, there is a presumption of negligence. How much testimony is necessary to overcome this presumption is a question of fact for the jury. *McLeod v. Railroad Co.,* 93 S. C. 71, 76 S. E. 19, 705.

Mrs. Thompson, one of the plaintiffs, said, "What is the matter with this train; it rocked and pitched all night?" Did it rock and pitch all night? Mrs. Thompson was in the drawing room of a Pullman. Would a man of ordinary prudence, who was exercising due care, know that something was wrong when the Pullman rocked and pitched all night? If the jury thought so, then there was evidence from which the jury could infer negligence, independent of the presumption. The appellant says it did everything that it could have done, in that it made inspection after inspection and found only one thing wrong, to wit, two new brake shoes were needed for the "Judsonia" (the car in which the plaintiff was injured). These were supplied. The witness

did not know how long a brake shoe would last. So it seems that the brake shoes that needed replacing had passed several inspections, unless they had worn to the danger point after leaving the initial terminal. There was no evidence to show that this defect developed after the car passed the other inspection. The appellant places much reliance on the testimony of an expert who states that he examined the wreck and in his judgment the cause of the accident was a broken bolt, and that the broken bolt was so placed that the most careful and expert inspection would not have revealed the defect; that the defect was a latent defect for which the carrier was not liable.

3      The jury is not bound to take the opinion of an expert witness.

This Court cannot say as a matter of law that the mere opinion of an expert witness is sufficient to overcome the presumption of negligence. This witness did not see the car until after the accident. Can even an expert tell, by

4, 5   looking at a wreck, what bolts were broken before the accident and what bolts were broken by the accident? That was a question for the jury, and this exception is overruled.

What has been said applies to the third exception, and the third exception is overruled.

3. The fourth exception complains that the verdict is against the manifest weight of the testimony. More than one inference can be drawn from the testimony, and

6      this Court has no jurisdiction to pass upon the manifest weight of the testimony, nor to disturb the verdict, because it may be greater than the Court may think proper.

The fifth exception is withdrawn.

4. The sixth exception is:

" 'I charge you that, if you conclude from the evidence in this case that the consideration paid for these releases was so out of proportion to the injuries received as to shock the

conscience of a reasonable person, under those circumstances it would release them and would not hold them bound by it, but that depends on the extent of the injuries that was caused by the Atlantic Coast Line Railroad Company; if the injuries were silght and reasonably in keeping with the amount paid for the release and they were willing to settle for that amount, why they would be bound by it.'

"The error being that this constituted a direction that the release was invalid, if the amount paid was not reasonably in keeping with the injuries received.

"Whereas, inadequacy of compensation is not ground for setting aside a release obtained without fraud, coercion, or misrepresentation."

His Honor charged as follows:

"If these releases were signed and the parties who signed them knew what they were doing, and did it freely and voluntarily, based on the belief that they were only slightly injured, and did it in good faith, why then they could not recover. But if they were induced to sign these releases by fraud, coercion, or misrepresentation, not knowing or understanding what they were doing, and were persuaded to sign these releases, they would not be bound because fraud vitiates."

Thus his Honor charged that, not mere inadequacy of consideration, nor after developed facts, would destroy the release, but that fraud was necessary, and he charged that both before and after the charge complained of.

There was testimony in the case from which the jury might have inferred that the ladies were not in a condition to know what they were doing. A mother with her children and aunt are fastened in the drawing room of a Pullman car. The car is turned over on its side; the door will not open; there is a cry made that they may burn up if the car takes fire before they can get out; they find it necessary to break open a window, through which they are taken to safety; the negro porter, by whose heroism the sick baby is

taken out, collapses from his own injuries; the mother, the plaintiff, is wounded on the head and shows a mark as big as a "lemon"—and all the other circumstances connected with the accident were before the jury.

7, 8　　　The issue was properly submitted, an dthe charge was not misleading, taken as a whole.

This exception is overruled.

5. His Honor directed a verdict in favor of the Pullman Company, and this is the basis of the last exception.

The appellant cannot complain as its own witnesses testified that it was the duty of the railroad company to inspect and repair the running gear of the Pullman cars while in use. There was no suggestion that the Pullman Company was responsible for the roadbed. This exception is overruled.

The judgment is affirmed.